UNITED STATES DISTRICT COURT        O
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| OLGA GARCIA, | § | |
| | § | |
|     Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. L-08-160 |
| | § | |
| WEBB COUNTY, TEXAS, | § | |
| | § | |
|     Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Webb County, Texas's ("Defendant") Motion for Summary Judgment. [Dkt. No. 15].[1] Also pending before the Court is Olga Garcia's ("Plaintiff") Motion to Strike Defendant's Reply. [Dkt. No. 18]. After due consideration of Defendant's motion, the summary judgment evidence, and the governing authorities, Defendant's summary judgment motion is **GRANTED**.

### I.    BACKGROUND

Plaintiff is a 58 year-old individual residing in Webb County, Texas. [Dkt. No. 1]. On February 27, 1997, she became employed with the Webb County Indigent Health Care Services Department ("WCIHCSD"), a state-mandated program which functions as a payor of last resort for health care expenses for indigent persons in Webb County, Texas. [Dkt. No. 15, Ex. A at 2]. During her employment, Plaintiff worked as a "Claims Processor I/Supervisor." [Dkt. No. 15, Ex. B, unnumbered p. 2]. In this position, Plaintiff was generally responsible for processing claims submitted to WCIHCSD from healthcare providers. [*See* Dkt. No. 15, Ex. A at 2 & Ex. B, unnumbered p. 2]. Specifically, Plaintiff reviewed such claims and was required to ensure

---

[1] "Dkt. No." refers to the docket number entry in the Court's electronic filing system. The Court will cite to the docket number entries rather than the title of each filing.

that each claim had been issued both a voucher number and an approximate dollar amount for said services. [Dkt. No. 15, Ex. B, unnumbered p. 2]. Claims in proper compliance were then processed for payment. [*Id.*]. If a claim did not have a voucher number, Plaintiff returned the claim to the provider and stated, through a denial letter, why the claim was being returned. [*Id.*].

On a weekly basis during her employment, Plaintiff prepared "Request for Payment Forms" for those claims processed for payment. [*Id.*]. Frank Salinas ("Salinas"), Director of WCIHCSD, and Nancy Cadena ("Cadena"), Deputy Director of WCIHCSD, then reviewed, approved, and signed these request forms. [*Id.*]. Next, Plaintiff forwarded the request forms to an auditors' department, which also reviewed and approved the forms, in order for corresponding checks to be processed for payment. [*Id.*]. Plaintiff then mailed the checks to providers, along with a printout detailing the services being paid. [*Id.*].

Beginning in 2007, Salinas and Cadena took a series of disciplinary actions against Plaintiff. [Dkt. No. 15, Ex. A, unnumbered p. 2-3]. On January 23, 2007, Plaintiff was written up because the billing department processed only 20 claims in one week, whereas Plaintiff and another employee were expected to process an average of 40 claims per week. [Dkt. No. 15, Ex. A]. On January 29, 2007, Plaintiff was written up for paying $11,097.45 in response to a claim, when the actual voucher amount issued was only $6,516.70. [*Id.*]. On April 13, 2007, Plaintiff received a formal written reprimand for making a double payment to a hospital, failing to report the error to management, and otherwise failing to properly document the error. [*Id.*]. The reprimand advised Plaintiff that any further negligence in her job performance could result in termination of her employment. [*Id.*].

One week later, on April 20, 2007, Plaintiff was written up for improperly handling a refund check for a service provider: erroneously, she deposited the refund check to an account

for Webb County, instead of returning the check to the service provider.  [*Id*.].  On May 15, 2007, Plaintiff received notice from Cadena that she was being suspended for five work days due to her errors and mistakes.  [*Id*.].  Cadena further advised Plaintiff that her suspension served as a notification of problems with her job performance, and that a failure to improve her attitude could result in termination of her employment.  [*Id*.].

Thereafter, on June 6, 2007, Plaintiff was written up for leaving the billing department unmanned, and for failing to make arrangements to ensure that the department was represented.  [*Id*.].  On July 3, 2007, Plaintiff was written up for allegedly failing to respond truthfully when questioned by Cadena about why she had failed, under standard procedure, to return a claim filed by a nurse practitioner.  [*Id*.].  On July 26, 2007, she was written up for failing to follow standard procedures to locate a voucher and, consequently, improperly returning a service provider's claim.  [*Id*.].

Defendant continued taking disciplinary action against Plaintiff in 2008.  On January 16, 2008, Plaintiff was written up for improperly returning a case to a caseworker for reimbursement from a pharmacy, even though she allegedly knew that pharmacies did not provide reimbursements.  [*Id*.].  On January 28, 2008, Plaintiff was written up for improperly assisting a co-worker with duties, and for yelling in her office during a conversation held with Cadena about such conduct.  [*Id*.].  Plaintiff also received a formal written reprimand for yelling in the office.  [*Id*.].  And on February 14, 2008, Plaintiff was written up for failing to notify management of a billing error, and for failing to respond honestly when Salinas questioned her about the error.  [*Id*.].  That same day, Plaintiff's employment with WCIHCSD was terminated.  [*Id*.].

On December 12, 2008, Plaintiff filed an Original Complaint under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, alleging that she was

replaced by a 25-year-old woman and that she was otherwise unlawfully terminated because of her age. [Dkt. No. 1, ¶ 17]. On December 15, 2009, Defendant filed the pending summary judgment motion, contending that no evidence exists to show that age played any role in Plaintiff's termination. [Dkt. No. 15, ¶ 8]. Defendant also contends that Plaintiff was discharged for poor work performance, [*Id.*, ¶ 12], and had previously been disciplined on several occasions, as a result of mistakes, her failure to remedy errors, sub-par work performance, and a poor attitude. [*Id.*, ¶ 8]. Additionally, Defendant avers that, both in her answers to interrogatories and during her deposition, Plaintiff was unable to present any evidence that she was terminated because of her age. [*Id.*, ¶ 9].

On January 16, 2010, more than one month after Defendant filed its summary judgment motion, Plaintiff filed a Response. [Dkt. No. 16]. On January 27, 2010, Defendant filed a Reply to Plaintiff's Response, asserting that the Court should disregard the Response because it was not filed in a timely manner. [Dkt. No. 17]. Thereafter, Plaintiff filed the pending Motion to Strike Defendant's Reply. [Dkt. No. 18].

## II.     DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The initial burden, borne by the moving party, requires a showing to the Court of the basis for the motion, as well as an identification of the portions of the record "which [the moving party] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists when the evidence is such that

a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). All facts and evidence must be taken in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

The evidentiary standard for summary judgment motions is provided by Federal Rule of Civil Procedure 56(e). The rule states in part:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit.

FED. R. CIV. P. 56(e)(1). Moreover, in responding to a properly supported motion for summary judgment, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in this rule-set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). If a party does not so respond, summary judgment should be entered. *See id*.

However, "[a] motion for summary judgment cannot be granted simply because there is no opposition. . . ." *Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985) (citing *John v. La. (Bd. of Trustees for State Colleges & Universities)*, 757 F.2d 698, 709 (5th Cir. 1985)). Regardless of whether any response was filed, a district court must determine whether the moving party has established the absence of a genuine issue of material fact. *Hibernia Nat. Bank*, 776 F.2d at 1279 (citing *John* at 708). Nonetheless, in making this determination, a district court may accept as undisputed the facts listed in support of summary judgment, if the motion is unopposed. *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988) (citing *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574

(1986)).

While Defendant filed its summary judgment motion on December 15, 2009, Plaintiff did not file her Response until January 16, 2010.  In its Reply, Defendant asserts that the Response should be disregarded because it was not filed in a timely manner.  [Dkt. No. 17, ¶ 3].  Pursuant to Rule 56(c)(1)(B), "a party opposing the [summary judgment] motion must file a response within 21 days after the motion is served. . . ."  FED. R. CIV. P. 56(c)(1)(B).  Additionally, Local Rule 7.4 provides that a response "must be filed by the submission date" and that "[f]ailure to respond will be taken as a representation of no opposition."  S.D. Tex. L.R. 7.4.  Additionally, Local Rule 7.3 provides that "[o]pposed motions will be submitted to [the Court] 21 days from filing. . . .")  Accordingly, Plaintiff's response was due January 5, 2010.  Thus, it was untimely.  Further, Plaintiff has not responded to Defendant's claim that Plaintiff's response is untimely, nor has Plaintiff sought leave of court to file her Response past the submission date.[2]  Since Plaintiff did not file her response in a timely manner, the Court considers Defendant's summary judgment motion as being unopposed.  Further, the Court treats the summary judgment evidence proffered by Defendant as being undisputed.

Apparently attempting to strike an equal blow, Plaintiff has filed a Motion to Strike Defendant's Reply.  [Dkt. No. 18].  Plaintiff asserts that Federal Rule of Civil Procedure 56 does not allow moving parties to file a reply.  [*Id.*].  Instead, Plaintiff contends that Rule 56 merely provides for a moving party to provide supplementary summary judgment evidence; consequently, Plaintiff argues that "to the extent that [Defendant's] 'reply' contains anything other than supplementary *evidence*, it should be stricken."  [*Id.* (emphasis in original)]. However, the current version of Federal Rule of Civil Procedure 56 provides that "[a] movant

---

[2] The Court notes that Plaintiff has repeatedly failed to comply with the applicable deadlines and Court orders.  [*See* Dkt. No. 14 & Dkt. No. 21].

6 / 12

may file a reply . . . after the response is served." FED. R. CIV. P. 56(c)(1)(C).[3]  Thus, Plaintiff's Motion to Strike is clearly without merit, and is therefore **DENIED**.

   **B.**  **Standard Governing ADEA Claims**

  In relevant part, the ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, *because of* such individual's age[.]"  29 U.S.C. § 623(a)(1) (2008) (emphasis added).  Under the plain language of § 623(a)(1), "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision.'"  *Gross v. FBL Fin. Servs., Inc.*, 129 S.Ct. 2343, 2351 (2009); *see also Cervantez v. KMGP Servs. Co. Inc.*, 2009 WL 2957296, at *5 (5th Cir. 2009) (unreported) (noting that "[t]o establish an ADEA claim, '[a] plaintiff must prove by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision'") (citation omitted).

  "'A plaintiff can demonstrate age discrimination in two ways, either through: direct evidence or by an indirect or inferential [circumstantial] method of proof.'"  *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (quoting *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)).  "Plaintiffs producing only circumstantial evidence of discriminatory animus . . . must negotiate the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*."  *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) (citation omitted); *see also Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008) ("Although *McDonnell Douglas* was a Title VII case, the burden-shifting framework established therein has been adapted and applied to cases under the [ADEA]. . . .")  Under the first step of this analysis, a plaintiff must establish a prima facie case of discrimination by showing (1) that she belongs to a protected group of persons over the age of forty; (2) that she

---

[3] The revision went into effect on December 1, 2009, and therefore applies to this case.

was qualified for her position; (3) that she was discharged; and (4) that she was replaced with someone younger. *Sandstad*, 309 F.3d at 897 (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 654 (5th Cir. 1996).

"Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to proffer a legitimate nondiscriminatory reason for its employment action." *Machinchick*, 398 F.3d at 350 (citing *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003)). The Supreme Court has noted that "[t]his burden is one of production, not persuasion; [and that] it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (quoting *St. Mary's Honor Center*, 509 U.S. 502, 509 (1993)). "If the defendant meets its burden, the presumption of discrimination created by the prima facie case disappears, and the plaintiff is left with the ultimate burden of proving discrimination." *Sandstad*, 309 F.3d at 897 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511-12 (1993)).

In its Reply, Defendant, citing *Gross v. FBL Financial Servs., Inc.*, contends that the *McDonnell Douglas* burden-shifting framework should not be applied in determining whether Plaintiff can proceed to trial with her ADEA claim. [Dkt. No. 17, ¶ 4].[4] Defendant's reliance on *Gross* for this proposition is misguided.

In that case, the Supreme Court "rejected the application of Title VII's 'motivating factor' standard to ADEA mixed-motive cases." *Cervantez*, 2009 WL 2957297, at *5 n.7 (5th Cir. 2009) (citing *Gross*, 129 S.Ct. at 2349-51). Defendant has apparently failed to discern that, when the Supreme Court noted that "[i]t has never held that *this burden-shifting* framework

---

[4] In its Reply, Defendant represents that, in *Gross*, the Supreme Court stated that, "[t]his Court has never applied Title VII's burden-shifting framework to ADEA claims and declines to do so now." [Dkt. No. 17, ¶ 4]. The language quoted by Defendant is actually from the syllabus, not the opinion, and of course, "[t]he syllabus constitutes no part of the opinion. . . ." *Gross v. FBL Financial Servs., Inc.*, 129 S.Ct. 2343, 2344 (2009).

applies to ADEA claims[,]" it was referring to the motivating-factor analysis established in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).[5]  *See Gross*, 129 S.Ct. at 2349 (emphasis added). Contrary to Defendant's suggestion, the Supreme Court was not referring to the *McDonnell Douglas* framework. Indeed, the Supreme Court explicitly noted that "[it] has not definitively decided whether the evidentiary framework of *McDonnell Douglas* . . ., utilized in Title VII cases is appropriate in the ADEA context." *Gross* 129 S.Ct. at 2349, n.2.

In the instant case, Plaintiff has not presented a mixed-motive claim, thus the Supreme Court's holding—that the motivating factor standard established in *Price Waterhouse* does not apply to ADEA claims—bears no relevance to this case. *See Cervantez*, at *5 ("The Supreme Court's recent decision in *Gross* rejected the application of Title VII's "motivating factor" standard to ADEA mixed-motive cases. . . . That holding has no effect on today's analysis because, on appeal, Cervantez did not advance a motivating-factor theory.")  However, in this Circuit, the *McDonnell Douglas* burden-shifting framework continues to apply to ADEA cases. *Id*. at *3.  Having clarified the proper analytical framework, the Court now turns to address whether Defendant has established the absence of a material fact issue as to Plaintiff's age discrimination claim.

### C.     Burden-Shifting Framework

As a threshold matter, Defendant does not appear to contest that Plaintiff can establish a prima facie case of age discrimination. First, at the time of her termination (February 14, 2008), Plaintiff was 58 years old and so belonged to a protected group of persons over the age of 40. [*See* Dkt. No. 15, Ex. B, unnumbered p. 1]. Second, Defendant does not assert that Plaintiff was

---

[5] In *Price Waterhouse v. Hopkins*, the Supreme Court held that "once a plaintiff in a Title VII case shows that gender played a *motivating part* in an employment decision, the defendant may avoid a finding of liability only be proving that it would have made the same decision even if it had not allowed gender to play such a role."  490 U.S. 228, 244-45 (1989) (emphasis added).

not qualified for her position. Third, there is no dispute as to whether Defendant terminated Plaintiff. And fourth, Defendant does not controvert Plaintiff's allegation, asserted in her answers to interrogatories, that she was replaced by a person outside the protected class. [*Id.*, unnumbered p. 3].

Defendant's summary judgment motion focuses on the second part of the *McDonnell Douglas* burden-shifting framework. Defendant offers a legitimate nondiscriminatory reason for Plaintiff's termination. Specifically, Defendant contends that Plaintiff was terminated as a result of her poor work performance. [Dkt. No. 15, ¶ 8]. In support, Defendant directs the Court to the joint affidavit of Frank X. Salinas ("Salinas") and Nancy Cadena ("Cadena"), who serve as the Director and Deputy Director of the Webb County Indigent Health Care Services Department, respectively. [Dkt. No. 15, Ex. A]. In their affidavit, Salinas and Cadena state that Plaintiff's age had nothing to do with her termination, and they aver that Plaintiff was discharged as a result of her poor performance and her poor attitude. [*Id.* at 3].

Attached to its summary judgment motion, Defendant has also provided several documents which collectively chronicle Plaintiff's work performance, and the disciplinary actions taken against her in 2007 and 2008. [*See* Dkt. No. 15, Ex. A]. The undisputed evidence shows that Plaintiff was written up in 2007 for several work performance issues and errors, including: processing only 20 claims in one week; erroneously paying an additional sum in response to a claim; improperly handling a refund check; leaving the billing department unmanned; failing to respond truthfully when questioned about her failure to return a claim; and failing to follow standard procedures in locating a voucher. [*Id.*]. In April 2007, Plaintiff received a formal written reprimand as a result of making a double payment to a hospital; the reprimand advised her that further negligence in her job performance could result in her

termination. [*Id.*]. The next month, Plaintiff was suspended for five days, due to her errors and mistakes, and was advised that the suspension served as notification of problems with her job performance, and that failure to improve her attitude could result in her termination.

The summary judgment evidence also reflects that Plaintiff continued to perform poorly at work in 2008. In that year, she was written up for improperly returning a case related to a pharmacy for reimbursement; for improperly assisting a co-worker with duties; for yelling in her office (which also caused her to receive a formal written reprimand); for failing to notify management of a billing error; and for failing to respond honestly when questioned about the error. [*Id.*]. In conjunction with documents from Plaintiff's personnel file chronicling her work history, the joint affidavit of Salinas and Cadena shows that Plaintiff was terminated for a nondiscriminatory reason. Because Defendant has satisfied its burden of production, the Court must determine whether the summary judgment evidence raises a fact issue that the reasons proffered by Defendant are pretext for age discrimination.

A thorough review of the summary judgment evidence establishes the absence of any evidence that Plaintiff was terminated because of her age. In response to an interrogatory asking her to describe the facts and circumstances surrounding her claim that she was terminated because of her age, Plaintiff answered as follows: "(1) I am in the protected class; (2) I was replaced by a person outside the protected class; (3) after I sustained an adverse employment." [Dkt. No. 15, Ex. B]. While this may be sufficient to make out a prima facie claim, it is not sufficient to show that age discrimination was the "but-for" cause of her termination when Defendant has offered a legitimate non-discriminatory reason for termination. Additionally, during her deposition, Plaintiff was asked to specify other facts or circumstances which led her to think she was fired because because of her age. [Dkt. No. 15, Ex. C]. Plaintiff responded by

stating, "[j]ust the fact that I was replaced by somebody younger." [*Id*.]. Plaintiff has clearly failed to produce any summary judgment evidence sufficient to raise a fact issue that age was the "but-for" cause of her termination. Therefore, she cannot proceed with her ADEA claim.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Strike, [Dkt. No. 18] is **DENIED,** and Defendant's Motion for Summary Judgment is hereby **GRANTED**. [Dkt. No. 15]. Final Judgment shall issue under separate cover.

IT IS SO ORDERED.

DONE this 25th day of February, 2010, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**